**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**DEBORAH WILSON SHREWSBURY,**

      **Plaintiff,**

v.	Case No:  6:16-cv-1840-orl-40GJK

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

**REPORT AND RECOMMENDATION**

Deborah Wilson Shrewsbury (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income benefits. Doc. No. 1. Claimant alleges a disability onset date of December 20, 2011. R. 16. Claimant argues that the Administrative Law Judge (the "ALJ") erred in weighing Claimant's credibility and failing to fully develop the record. Doc. No. 17 at 18-20, 25-26. For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

    **I.**    **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (2010). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the

Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, considering evidence that is favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## II.  ANALYSIS

Claimant argues that the ALJ erred in weighing Claimant's credibility and failing to fully develop the record. Doc. No. 17 at 18-20, 25-26.

### A.  Credibility Determination

Claimant argues that the ALJ's credibility determination was improper. Doc. No. 17 at 18-20. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62; *see also* Social Security Ruling 96-7p, 1996 WL 374186, at *2 (July 2, 1996) ("It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"). In rejecting the claimant's statements regarding pain or the effect the symptoms have on the claimant's ability to work, the ALJ cannot rely solely on the fact that objective medical evidence does not substantiate the claimant's representations. 20 C.F.R. § 404.1529(c)(2); *see also* SSR 96-7p, 1996 WL 374186, at *1. A

reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1562.

The ALJ found that Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were "not entirely credible . . . ." R. 22. The ALJ described Claimant's treatment for back pain, chronic obstructive pulmonary disorder (COPD), and diabetes as "conservative and limited to medication management, without associated complications or significant hospitalizations." R. 22. Claimant argues that the ALJ failed to consider Claimant's financial reasons for the conservative treatment she received. Doc. No. 17 at 18. Claimant contends that there are good reasons for her conservative treatment, including that she could only afford to go to Brevard Health Alliance, and Brevard Health Alliance was limited in the treatment and types of drugs that it could provide. *Id.* at 18-19. Claimant also asserts that the ALJ was not entirely correct in saying that Claimant's back pain, COPD, and diabetes were treated at Brevard Health Alliance without associated complications or significant hospitalizations. *Id.* at 19. Claimant argues that the ALJ's finding that Claimant had few hospitalizations for back pain suggests that the pain is not as significant as Claimant contends, "shows insensitivity to Ms. Shrewsbury's financial condition, her lack of insurance, and her inability to pay for these visits or the resulting medications that came from these emergency room visits." *Id.* at 20.

The ALJ mentions Claimant's financial issues on the same page of her decision as the finding that the treatment was conservative, stating that "[C]laimant was only given samples of medication, such as Advair and Symbicort, given her reported lack of money or insurance." R. 22. Thus, the ALJ did consider Claimant's claim of financial problems.

More importantly, the ALJ did not rely solely on Claimant's conservative treatment to find her credibility lacking. The ALJ also found that Claimant's "physical examinations failed to detail any objective findings consistent with the [C]laimant's complaints of limitations." R. 22. The ALJ reviewed treating records from the Brevard Health Alliance, which "consistently showed that the [C]laimant had normal physical examinations, with clear lungs bilaterally to auscultation, a steady gait with no limping, and with no pain complaints noted . . . ." R. 22, 368-69, 383, 385-86, 393, 395, 396, 400, 402, 413, 420, 425, 468, 471, 541, 543, 544, 550, 552, 569, 578, 580-81. The ALJ noted Claimant's issues with compliance. R. 22. The records demonstrated that Claimant was not seen for six months from July 2013 through January 2014, she reported not taking her medicine, and she continued to have increasing A1c levels, but when she did visit the doctor, she "declined further diabetic information . . . ." R. 383, 413, 420, 468, 541, 544, 550, 569, 578.

The ALJ then recounted the lack of evidence regarding "recurrent emergency room visits or extended hospitalizations due to diabetic urgency or associated complications, such as neuropathy or retinopathy." R. 22. The ALJ did note the hospitalizations due to COPD exacerbation and hyperglycemic episode, the couple of emergency room visits for back pain complaints, and the emergency room visits associated with rib and chest pain. R. 22-23, 342-47, 486-92, 501-07, 508-18, 527-31, 533-36, 557-64.

The ALJ also outlined the findings following a consultative examination with Homi Cooper, M.D., an orthopedist. R. 23. Dr. Cooper found that Claimant's physical examination was normal. R. 23, 380-82. Lumbar x-rays showed 50% narrowing of the interspace between L5-S1, but was otherwise normal. R. 23, 382.

Finally, the ALJ noted that although Claimant complains of back pain, the records from Brevard Health Alliance do not show that she was regularly prescribed with medications for back pain. R. 24. Additionally, "[C]laimant rarely complained of back pains." R. 24. The ALJ concluded the credibility analysis by noting that not one treating source "established specific functional limitations upon the [C]laimant in light of her impairments . . . ." R. 24.

Thus, the ALJ set forth several explicit and adequate reasons for finding Claimant not entirely credible. These reasons are supported by the record. The ALJ did not rely solely on Claimant's conservative treatment or lack of hospitalizations. Instead, the ALJ also pointed to the numerous medical records finding Claimant had normal capacities, such as the physical examinations from Brevard Health Alliance and Dr. Cooper's physical exam, and the lumbar x-rays. R. 22-23, 368-69, 380-82, 385-86, 395-96, 402, 415-16, 420-21, 425, 470-71, 543-44, 552-53, 571-72, 581. She also noted Claimant's failure to comply with medical treatment, including declining information regarding diabetes. R. 22. As the ALJ's reasons for discounting Claimant's credibility are supported by the record, and the conservative treatment was neither the primary nor a significant basis for discounting Claimant's credibility, it is recommended that the ALJ's decision be affirmed. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (holding that the ALJ's failure to consider the claimant's financial ability to obtain treatment was not reversible error when the ALJ's disability determination "was not significantly based on a finding of noncompliance."); *Ewald v. Comm'r of Soc. Sec.*, No. 2:15-CV-291-FTM-CM, 2016 WL 3563872, at *8 (M.D. Fla. July 1, 2016) (finding that the ALJ did not err in failing to consider the claimant's financial situation when the credibility decision was not based on the claimant's lack of compliance with treatment); *Barchard v. Colvin*, No. 8:13-CV-1530-T-PAZ, 2014 WL 11411860, at *7 (M.D. Fla. Oct. 21, 2014), *aff'd sub nom. Barchard v. Comm'r of Soc.*

*Sec.*, 628 F. App'x 685 (11th Cir. 2015) (where most of the ALJ's credibility determination "included a discussion of objective medical evidence that conflicted with the Plaintiff's complaints of chronic disabling pain and other subjective symptoms[,]" any error the ALJ committed in basing the credibility determination on the claimant's lack of treatment without affording claimant's financial situation significant consideration was harmless "because the ALJ provided other substantial evidence to support his credibility determination and ultimate RFC assessment.").

### B. Duty to Fully Develop the Record

Claimant's second argument is that the ALJ erred by failing to fully and fairly develop the record. Doc. No. 18 at 25-26. Social security proceedings are inquisitorial, not adversarial, and the ALJ has a duty to investigate facts and develop arguments for granting and denying benefits. *Sims v. Apfel*, 530 U.S. 103, 110 (2000). Relatedly, the ALJ has a basic duty to develop a full and fair record. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). The claimant, however, has the burden of proving disability and must produce evidence to support the disability claim. *Ellison v. Barnhart*, 355 F.3d at 1276. One district court explained the connection between the claimant's burden and the ALJ's duty as follows:

> [I]n general, the claimant has the burden of obtaining his medical records and proving that he is disabled. 20 C.F.R. § 404.1512(a) and (c). On the other hand, the Commissioner (*nee* ALJ) has the responsibility to make every reasonable effort to develop the claimant's complete medical history, for at least the twelve months preceding the month in which the claimant filed his application and, if applicable, for the twelve month period prior to the month in which he was last insured. 20 C.F.R. § 404.1512(d).

*Rease v. Barnhart*, 422 F. Supp. 2d 1334, 1372 (N.D. Ga. 2006).

A claimant who asserts that the ALJ violated the duty to develop a full and fair record must show "prejudice before we will find that the claimant's right to due process has been

violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Brown v. Shalala*, 44 F.3d at 935. Demonstrating prejudice requires "showing that the ALJ did not have all of the relevant evidence before him in the record . . . or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985). "In evaluating the necessity for a remand, [the court is] guided by 'whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Brown*, 44 F.3d at 935 (quoting *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982)).

The duty to develop the medical history applies to the twelve months preceding the application date for disability benefits. 20 C.F.R. § 416.912(b)(1); *Ellison v. Barnhart*, 355 F.3d at 1276. The ALJ "is not bound to develop the record after that date." *Larry v. Comm'r of Soc. Sec.*, 506 F. App'x 967, 969 (11th Cir. 2013) (citing *Ellison*, 355 F.3d at 1276).[1]

Claimant argues that the ALJ failed to develop the record with her records from Dr. Levinsky demonstrating that she continued to see Dr. Levinsky for therapy for depression. Doc. No. 17 at 25-26. Claimant argues that the ALJ used her failure to get counseling as evidence to find that her depression was not a severe impairment, but when counseling records were available, the ALJ did not use every reasonable effort to obtain them to determine the severity of her depression.[2] *Id.* at 26. Claimant also argues that the records could bear out Dr. Levinsky's administration of a depression assessment that indicated that Claimant was suffering from severe depression. *Id.*

---

[1] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[2] The ALJ noted in her decision that Claimant did not have treating notes regarding her alleged major depressive disorder, "even though the records do contain primary care notes through January 2015 and the [ALJ] has granted several extensions for the claimant/representative to submit relevant evidence." R. 19.

During the hearing, Claimant's attorney represented that the missing records were from Dr. Levinsky's treatment "this month." R. 589. The hearing was held in January 2015, R. 586, and Claimant applied for disability benefits over two years earlier in August 2012. R. 16. Thus, the records Claimant argues the ALJ should have obtained were from a period of time beyond the twelve months preceding her application, and the ALJ had no duty to obtain them.[3]

At the hearing, the ALJ and Claimant's attorney discussed whether there were any additional documents needed to complete the record. R. 586. Claimant's attorney mentioned the records from Dr. Levinsky, but then stated that these records were cumulative to the evidence already in the record. R. 590. The ALJ stated that she would wait for two weeks for the records to come in, but if they did not arrive in that time, then she would "just have to make a decision based on what's present . . . ."[4] R. 591. Claimant's attorney responded, "Thank you," to this statement. R. 591. Thus, Claimant's attorney represented that the records would be cumulative and did not object to the ALJ deciding the matter if the records did not come in within two weeks of the hearing.

Claimant also did not demonstrate prejudice resulting from the missing documents. The Claimant points to the ALJ's finding that there were no treating notes regarding depression as a basis for finding that Claimant's depression is not a severe impairment. Doc. No. 17 at 26. But the ALJ also "considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments" to determine whether Claimant's depression is severe.[5] R. 19. Claimant does not show any evidentiary gaps in the record regarding these four broad functional areas that the missing documents would have

---

[3] Claimant does not argue that the ALJ failed to develop the medical record regarding the twelve months before her application was filed. Doc. No. 17.
[4] The ALJ's decision is dated March 27, 2015, more than two months after the hearing. R. 13.
[5] These four areas are activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. R. 19-20.

filled. Her argument that the missing documents could have supported the assessment of severe depression that already existed in the record shows that the missing documents would have been merely cumulative. Doc. No. 17 at 26. Additionally, her attorney stated at the hearing that the records would be cumulative. R. 590. Thus, the ALJ did not err in failing to develop the record. *See generally Williams v. Comm'r, Soc. Sec. Admin.*, No. 16-16968, 2017 WL 3127137, at *2 (11th Cir. July 24, 2017) (holding that ALJ fulfilled the duty to develop the record when the ALJ asked the claimant's attorney at the hearing whether the record contained everything the claimant wanted the ALJ to review).

### III.    CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that:

1. The final decision of the Commissioner be **AFFIRMED**; and
2. The Clerk be directed to enter judgment for the Commissioner and close the case.

The parties have fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on August 28, 2017.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies to:

Suzanne L. Harris, Esq.
Of Counsel, Olinsky Law Group
One Park Place
300 South State St., Suite 420
Syracuse, NY 13202

W. Stephen Muldrow
Acting United States Attorney
John F. Rudy, III
Assistant United States Attorney
Suite 3200
400 N. Tampa St.
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Susan K. Story, Acting Regional Deputy Chief Counsel
Brian Seinberg, Branch Chief
Stephanie C. Johnson, Assistant Regional Counsel
Social Security Administration
Office of the General Counsel, Region IV
Atlanta Federal Center
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Valencia Jarvis
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc
500 East Broward Boulevard
Suite 1000, 10th Floor
Ft. Lauderdale, FL 33394